UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JUSTIN MILO BEESON,<br><br>        Plaintiff,<br><br>   v.<br><br>HON. JUDGE CHERI COPSEY;<br>DAVID NAVARRO; IDAHO<br>LEGISLATORS; IDAHO STATE<br>SUPREME COURT JUSTICES; IDAHO<br>STATE BOARD OF CORRECTION;<br>IDAHO DEPARTMENT OF<br>CORRECTION; and the STATE OF<br>IDAHO,<br><br>        Defendants. | Case No. 1:10-CV-454-BLW<br><br>**INITIAL REVIEW ORDER** |

The Clerk of Court conditionally filed Plaintiff's Complaint as a result of his status

as an inmate and his in forma pauperis request. The Court now reviews the Complaint to

determine whether it or any of the claims contained therein should be summarily

dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and

otherwise being fully informed, the Court enters the following Order.

## BACKGROUND

Plaintiff is an inmate in the custody of the Idaho Department of Correction

("IDOC") currently housed at the Idaho State Correctional Institution. Plaintiff alleges

**INITIAL REVIEW ORDER  1**

that he filed two lawsuits in state court that were dismissed for lack of service. (Complaint, Dkt. 3 at 15-16; Motion for Preliminary Injunction, Dkt. 8, at 4.) Plaintiff further alleges that he cannot accomplish service of process on his own, because he lacks the funds to pay for service of process and has been in jail for 25 years and no longer has the friends or acquaintances outside of prison necessary to accomplish service of process free of charge. Plaintiff claims that the statutory system requiring him, an indigent prisoner, to accomplish service of process on his own violates his federal constitutional rights to: (1) access the courts, (2) redress grievances, (3) equal protection of the law, and (4) due process, as well as the right to justice guaranteed by the Idaho Constitution. He seeks monetary, declaratory, and injunctive relief.

## STANDARD OF LAW

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915(e); 28 U.S.C. § 1915A. The Court must dismiss a complaint or any portion thereof which states a frivolous or malicious claim, which fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief. *Id.* A complaint should also be dismissed under Rule 8 of the Federal Rules of Civil Procedure if the factual allegations are not "plausible," but merely "conceivable." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009).

## REVIEW OF THE COMPLAINT

Plaintiff brings his constitutional claims under 42 U.S.C. § 1983, which creates a cause of action for the violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). As explained more fully below and pursuant to the *Rooker Feldman* doctrine, Plaintiff may not seek relief from the orders dismissing his cases in state court. However, this does not bar Plaintiff from challenging the statutory scheme and seeking prospective or declaratory relief against the appropriate Defendants.

## A.     The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine is an expression of federalism principles: a plaintiff cannot appeal to a federal district court when his claims have been dismissed by a state court. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine recognizes that "federal district courts lack jurisdiction to exercise appellate review over final state court judgments." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007). This jurisdictional bar applies to direct appeals from state court judgments, de facto appeals from state court judgments, and "any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003); *Doe v. Mann*, 415 F.3d 1038, 1042 (9th Cir. 2005).

**INITIAL REVIEW ORDER  3**

The doctrine recognizes the separate and distinct jurisdiction of state courts over state court appeals.  As the Ninth Circuit has explained,

> *Rooker-Feldman* is a powerful doctrine that prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing de facto appeals from state-court judgments: If claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction.  *See Feldman*, 460 U.S. at 483 n.16 & 485.  Simply put, 'the United States District Court, as a court of original jurisdiction, has no authority to review the final determinations of a state court in judicial proceedings.'  *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986).

*Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003).

Applied to the instant case, *Rooker-Feldman* prohibits Plaintiff from using the claims asserted here as a vehicle to appeal from his earlier state court dismissals.  There is an appeals process in the state courts, and Plaintiff must follow that process to the extent he seeks to appeal from the state district court dismissals of his state lawsuits.

However, the *Rooker-Feldman* doctrine does not prohibit Plaintiff "from presenting a generally applicable legal challenge to a state statute in federal court, even if that statute has previously been applied against him in state court litigation."  *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 606 (9th Cir. 2005).  Accordingly, while Plaintiff may not appeal from the state court dismissals, he may bring a more general constitutional claim relating to the statutory scheme that: (1) excludes indigent prisoners

**INITIAL REVIEW ORDER  4**

from the statute directing court officers to serve process on behalf of indigent parties[1] and (2) directs dismissal of the lawsuit for failure to serve.[2] As applied to indigent prisoners without a social network outside of prison, this system may create an unconstitutionally severe burden effectively blocking access to the courts.

For relief, Plaintiff may seek declaratory and injunctive relief. However, because he is limited to prospective relief, he may not seek monetary damages.

## B. The Statutory Scheme at Issue

Idaho statutes distinguish between indigent parties who are prisoners and those who are not. Idaho Code Section 32-3220 authorizes Idaho courts to waive filing fees, costs, and security for indigents. If a person is found indigent in Idaho state court, "[t]he officers of the court shall issue and serve all process." I.C. 31-3220(6).

Prisoners are excluded from the definition of "indigent." I.C. § 31-3220(1)(d). A separate section of the Idaho Code, Idaho Code Section 31-220A, applies specifically to prisoners – indigent or not. Indigent prisoners are not entitled to a fee waiver; instead, they must be assessed a partial filing fee. I.C. § 31-3220A(3). While the fee must be assessed, it cannot be collected unless "funds exist" and the statute prohibits dismissal of the lawsuit for failure to pay. I.C. §§ 31-3220A(4), (7).

---

[1] *See* Idaho Code § 31-3220(1)(d), (3).

[2] *See* I.R.C.P. 4(a)(2).

**INITIAL REVIEW ORDER  5**

Idaho courts have held that the distinct treatment of prisoners with regard to a partial fee payment, rather than a full waiver, does not violate an indigent prisoner's rights to access the courts or to equal protection. *See Madison v. Craven*, 141 Idaho 45,105 P.3d 705 (Ct. App. 2005) (holding statute excluding prisoners from full filing fee waiver provision did not violate rights to access to courts or equal protection); *Lerajjareanra O'Kel-ly v. Schow*, 147 Idaho 865, 216 P.3d 154 (Ct. App. 2009) (holding statute excluding prisoners from waiver of sheriff's fee for service of writs of execution and garnishment did not violate equal protection clause). This is generally consistent with federal law interpreting a similar fee provision contained in the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915. *See, e.g. Taylor v. Delatoore*, 281 F.3d 844, 848 (9th Cir. 2002).

At the same time, Idaho courts have held that dismissing a case for failure to pay is not permitted. *See Madison v. Craven*, 141 Idaho at 47, 105 P.3d at 707. While the courts can assess the initial filing fee; they may not collect the fee unless "funds exist." I.C. § 31-I3220A(4). The statute also unequivocally provides, "[i]n no event shall a prisoner be prohibited from bringing an action for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." I.C. § 31-3220A(7). This is also consistent with federal case law applying the PLRA. *Taylor v. Delatoore*, 281 F.3d 844 (holding initial fee assessment proper but dismissal of prisoner civil rights action for failure to pay in error).

**INITIAL REVIEW ORDER  6**

Thus, while protection against dismissal for inability to pay a filing fee is built into the statutory scheme, neither the Idaho statutes nor the courts have addressed the related issue raised here: whether a case may be dismissed for failure to serve when the plaintiff, an indigent prisoner, allegedly lacks the resources to accomplish service on his own.[3] The Idaho Supreme Court came close to addressing the issue in *Murray v. Spalding*, 141 Idaho 99, 101, 106 P.3d 425, 427 (2005). In *Murray*, the plaintiff's complaint was dismissed for failure to serve within six months as required by Rule 4(a)(2) of the Idaho Rules of Civil Procedure. *Id.* at 426. The plaintiff in *Murray* first attempted service through the mail and then asked for a court order directing the county to accomplish service before eventually accomplishing service on his own. *Id.* at 426-27. Nonetheless, because service was not timely, the district court dismissed the complaint pursuant to Idaho Rule of Civil Procedure 4(a)(2). *Id.* at 426-27.

The Idaho Supreme Court upheld the dismissal in *Murray* finding that the record did not show that Plaintiff had demonstrated good cause for delay. Idaho Rule of Civil Procedure 4(a)(2) provides:

> If a service of the summons and complaint is not made upon a
> defendant within six (6) months after the filing of the
> complaint and the party on whose behalf such service was
> required cannot show good cause why such service was not

---

[3] Federal courts have not addressed the issue either. In addition, federal case law interpreting thhe PLRA is of no assistance in this context, because the PLRA provides for service of process through the court clerk's office when a prisoner is indigent. 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in such cases.").

**INITIAL REVIEW ORDER  7**

made within that period, the action shall be dismissed as to
that defendant without prejudice upon the court's own
initiative with 14 days' notice to such party or upon motion.

I.R.C.P. 4(a)(2).

The Idaho Supreme Court noted that service of process can be accomplished in

one of two ways. First, for a fee, the prisoner can seek service of process through the

sheriff, *see* I.C. § 31-2202, or a process server. *Murray v. Spalding*, 141 Idaho at 101,

106 P.3d at 427. Second, the prisoner may try to accomplish service for free through a

friend or acquaintance who will do it for free.[4] *Id.*

Emphasizing that the plaintiff eventually managed to accomplish service of

process on his own, the Idaho Supreme Court reviewed the plaintiff's earlier attempts at

service and made the following conclusions concerning the district court's authority:

> The district court had no authority to waive any fee that may
> be charged to serve the summons and complaint. Since it is
> not the court who charges that fee, it cannot waive it. The
> district court likewise had no authority to order that any fees
> for service of the summons and complaint be paid at public
> expense. Idaho Code § 31-3220(6) provides that if the court
> finds that a person who is not a prisoner is unable to pay the
> fees for service of process in a civil lawsuit, such fees "shall
> be paid out of the district court fund of the county in which
> the action is filed." Idaho Code § 31-3220A, which applies to
> indigent prisoners, does not contain a similar provision.
> Finally, the district court had no authority to order that service
> of the summons and complaint be accomplished by mail. It
> could not disregard the Idaho Rules of Civil Procedure
> specifying the manner of accomplishing service.

---

[4] The Idaho Rules of Civil Procedure provide for service by any person over the age of
eighteen years who is not a party to the action. I.R.C.P. 4(c)(1).

*Id.*

Nonetheless, the *Murray* decision is different from the instant case. While the Plaintiff in *Murray* eventually accomplished service of process, the Plaintiff here did not. Moreover, Plaintiff claims that he is unable to accomplish service of process, because he is indigent and has been in prison so long that he no longer knows anyone outside of prison who can effectuate service on his behalf. Accordingly, without the means of accomplishing service, Plaintiff argues he effectively was prevented from bringing his claims in state court.[5]

In sum, while Idaho courts have had occasion to examine other aspects of Idaho Code Section 31-3220A, none have addressed the precise issue raised by Plaintiff's complaint. As explained more fully below, the Court finds that Plaintiff's allegations raise two potential federal constitutional claims regarding indigent prisoners' access to the courts and equal protection and a potential state constitutional claim regarding access to justice.

**C.      Access to the Courts and Right to Redress Grievances**

Plaintiff's rights to address grievances claim is best addressed in the access to the courts claim, as it is the most specific and directly applicable constitutional provision.

_____

[5] Plaintiff also alleges that he attempted to accomplish service by sending the defendants in his underlying state court actions waiver of service forms, but defendants refused to waive their rights to service of process.

**INITIAL REVIEW ORDER  9**

The right to redress grievances is grounded in several constitutional provisions, including "the Due Process Clauses of the Fifth and Fourteenth Amendments, the Privileges and Immunities Clause of Article IV, and the First Amendment's Petition Clause." *See* Una A. Kim, *Government Corruption and the Right of Access to the Courts*, 103 Mich. L.J. 554, (2004). The right to petition the government for a redress of grievances is broader than, but inclusive of, the right of access to the courts. *See Calif. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (holding right to petition extends to all three branches of government and right of access is "but one aspect of the right of petition").

Here, the particular right to redress at issue is access to the courts (or redress through the judicial branch). Therefore, Plaintiff's right to seek redress claim will be addressed under his access to the courts claim.

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). That access must be "adequate, effective and meaningful." *Id*. at 822; *see also Lewis v. Casey*, 518 U.S. 343, 354 (1996) (recognizing the Court's previous extension of the right of access to the courts to "civil rights actions"). This right, however, is not absolute or unconditional in the civil context, except in a very narrow band of cases where the litigant has "a fundamental

interest at stake." *Rodriguez v. Cook*, 169 F.3d 1176, 1180 (9th Cir. 1999) (citing *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996)).[6]

Idaho courts hold that requiring partial payment of the filing fee does not violate an indigent prisoner's right to access the courts, because "the filing fee provisions found in section 31-3220A are structured so as not to preclude the filing of action by indigents." *See Madison v. Craven*, 105 P.3d at 709. Because the inmate is charge a portion of the filing fee based on his ability to pay and is not prevented from filing an action when funds do not exist, Idaho Code § 31-3220A does not deny meaningful access to the courts.

However, the issue in the instant case is not the filing fee; it is the requirement that all prisoners, regardless of financial status, are responsible for effectuating service. Under the federal scheme, if a prisoner is found indigent, then "[t]he officers of the court shall issue and serve all process." 28 U.S.C. § 1915(d). Similarly, under the Idaho indigency statute, if a non-prisoner is found indigent, then "[t]he officers of the court shall issue and serve all process." Idaho Code § 31-3220(6). For the indigent prisoner, no such provision exists. Instead, indigent prisoners must either pay for service of process through the sheriff or a process server, or rely upon the kindness of someone outside the prison system to help effectuate process on their behalf.

---

[6] The Supreme Court has recognized fundamental rights in the context of termination of parental rights and to seek a divorce. *Id.* Plaintiff has not alleged a similar fundamental right in the claims he brought in state court that were dismissed for failure to serve.

**INITIAL REVIEW ORDER  11**

Read broadly, Plaintiff's allegations raise a colorable claim. Without the funds or social resources necessary to effectuate service, he may face an unconstitutional burden on his right to access the courts.

## D.    Equal Protection

"[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal quotation marks omitted). Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or national origin, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Otherwise, the "classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe by Doe*, 509 U.S. 312, 319-20 (1993) (internal quotation marks omitted).

**INITIAL REVIEW ORDER  12**

Under this rational basis inquiry, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. 440. In order to prevail on an equal protection claim, Plaintiff must thus demonstrate that he is being treated in a disparate manner, and that there is no rational basis for the disparate treatment. *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993).

As previously discussed, Idaho courts have found that the Idaho statutory scheme does not violate the equal protection clause by treating indigent prisoners and non-prisoners differently in terms of paying filing fees. In doing so, the courts first determined that prisoners are not a suspect class and the statutory scheme does not violate the prisoner's fundamental right of access to the courts. *See, e.g. Madison v. Craven*, 105 P.3d 705; *Lerajjareanra I'Kel-ly v. Schow*, 216 P.3d at 156. Second, in applying a rational basis test, the courts determined that the legislature had a rational basis for treating prisoners and non-prisoners differently and upheld the distinction. *Id.*

Examining the specific rationale for Idaho Code Section 31-3220A, the Idaho Court of Appeals states:

> After reviewing Section 31-3220A it is apparent that the intent of the legislature was to create a disincentive for the filing of frivolous claims by inmates and assuring financial accountability of prisoners. Section 31-3220A requires inmates to make decisions concerning the merits of their case and discourages them from filing frivolous lawsuits. Discouraging frivolous prisoner litigation and assuring prisoner financial accountability are legitimate concerns of

**INITIAL REVIEW ORDER 13**

the state and the classification is based on the state's goal of
reducing frivolous litigation.

*Madison v. Craven*, 105 P.3d at 708-09.

Federal courts considering similar equal protection challenges to the PLRA fee

provisions, 28 U.S.C. § 1915, have also applied a rational basis test. *See Taylor v.*

*Delatoore*, 281 F.3d at 848. The Ninth Circuit found a rational basis for the distinction

explaining as follows:

> [T]he financial burden of the filing fee requirements is . . .
> diminished by the fact that a prisoner's financial needs are not
> the same as those of a non-prisoner. Because prisoners are in
> the custody of the state and accordingly have the 'essentials of
> life' provided by the government . . . , an indigent prisoner
> would not ordinarily be required to make the choice between
> his lawsuit and the necessities of life in the same manner that
> a non-prisoner would.

*Id.* (citations omitted).

However, the issue in this case is different. The filing fee statutes provide certain

"fail safe" provisions, unequivocally stating that an indigent prisoner's claims will not be

dismissed for failure to pay. There is no similar provision applicable here. Instead, a

plaintiff without funds or other resources to accomplish service of process may find that

his claims are dismissed for failure to serve regardless of his resources. The "good cause"

provision of Rule 4 merely provides a means of obtaining more time to accomplish

service; it does not provide a mechanism for accomplishing service of process when the

plaintiff allegedly lacks the resources necessary to get it done by himself.

**INITIAL REVIEW ORDER  14**

Further, the rationale for charging a fee may be different from the rationale for requiring a prisoner to accomplish service of process. Certainly, by not lifting the burden of service of process from the indigent prisoner, the system deters the filing of multiple, frivolous lawsuits. However, it may deter the filing of any and all lawsuits by plaintiffs who lack the resources to accomplish service of process.

In short, the Court concludes that Plaintiff has stated a colorable equal protection claim. Previous case law has not addressed the particulars of the instant challenge to I.C. § 31-3220A.

## E.     Claims Based on State Constitutional Rights

Plaintiff also claims that Defendants violated the Article I, section 18 of the Idaho State Constitution, which states, "Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay, or prejudice." This claim is subject to the same analysis as that pertaining to the right of access to the courts guaranteed by the United States Constitution. *See State v. Brandt*, 16 P.3d 302, 304 (Idaho Ct. App. 2000) ("We note that Article I, Section 18, of the Idaho Constitution imposes the same standard as the Due Process Clause of the United States Constitution when determining the extent to which a prisoner is entitled to access to law libraries and legal material."). Based on the assumption that the access to court claim is part of the Fourteenth Amendment's guarantees of due process, the Court finds that Plaintiff has stated a colorable access to justice claim under the Idaho Constitution.

**INITIAL REVIEW ORDER  15**

**F.      Defendants**

Though he has colorable constitutional claims, Plaintiff may only proceed with these claims against a single Defendant: the Ada County Clerk. Plaintiff may not proceed with claims against the remaining Defendants either because they are immune from suit or do not have responsibility over the statutes and court rules at issue.

Plaintiff has named the following Defendants: District Judge Cheri Copsey, Ada County Clerk of Court David Navarro, the Idaho Legislators, Idaho State Supreme Court Judges, Idaho State Board of Corrections, Idaho Department of Corrections, and the State of Idaho. Plaintiff states that he brings these claims against the individual Defendants in their "individual-professional capacity." *Complaint*, pp.2-3 (Dkt. 3). The Court assumes Plaintiff to mean that he is suing these Defendants in their official as opposed to personal capacities.

First, as previously described, the *Rooker Feldman* doctrine bars Plaintiff from challenging his state court dismissals in federal court. Accordingly, the claims against Judge Copsey must be dismissed.

Second, the doctrine of sovereign immunity precludes Plaintiff from proceeding in federal court with his claims against the State of Idaho, the Idaho Board of Correction, and the Idaho Department of Correction.[7] In *Hans v. Louisiana*, 134 U.S. 1, 10 (1890),

---

[7] Moreover, the Idaho Board of Correction and Idaho Department of Correction cannot be held liable for any alleged failures in a statutory scheme designed to provide and control access to the courts. These state entities have no responsibility for the statutes at issue.

**INITIAL REVIEW ORDER  16**

the Supreme Court held that the Eleventh Amendment prohibits a federal court from entertaining a suit brought by a citizen against a state. The Supreme Court has consistently applied the Eleventh Amendment's jurisdictional bar to states and state entities "regardless of the nature of the relief sought." *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Third, Plaintiff may not bring the claims asserted against the Idaho Legislators, who are entitled to absolute immunity for all of their actions taken "in the sphere of legitimate legislative activity." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). This absolute legislative immunity extends both to actions for damages and actions for injunctive relief. *Supreme Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 732 (1980). Plaintiff contends that the Idaho State Legislators should be held liable for creating "Idaho state statutes." (Complaint at 6.) "Creating statutes" is protected, legislative activity immune from suit no matter what type of relief is sought.

Fourth, also because of the doctrine of legislative immunity, Plaintiff may not proceed against the Idaho Supreme Court Justices. Typically, judges are subject to judicial immunity. However, the allegations in the instant Complaint do not relate to the judicial functions performed by the Idaho Supreme Court Justices. Rather, the allegations relate to the statutory scheme, including provisions of the Idaho Rules of Civil Procedure, which allow for dismissal of a lawsuit brought by an indigent prisoner if he cannot effectuate service of process within the relevant time limits.

**INITIAL REVIEW ORDER  17**

The Idaho Supreme Court is responsible for promulgating rules of civil procedure applicable in state courts. However, when promulgating the rules of civil procedure, the Idaho Supreme Court Justices enjoy legislative immunity. *See Supreme Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. at 731 (extending privilege of legislative immunity to judiciary when it acts in legislative capacity). To determine whether legislative immunity applies, the Court must examine the nature of the functions performed. *Forrester v. White*, 484 U.S. 219, 233 (1988). Enacting rules "of general application," even if done by a judicial entity, can ultimately be a legislative act. *Supreme Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. at 731. Thus, Plaintiff may not proceed with his claims against the Idaho Supreme Court justices.

The only remaining Defendant is the Ada County Clerk.[8] Typically, court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process. *Morrison v. Jones*, 607 F.2d 1269, 1273 (9th Cir.1979). As long as the challenged activities are an integral part of the judicial process and were not taken in clear absence of all jurisdiction, court clerks typically enjoy absolute quasi-judicial immunity. *See Mullis v. United States Bankruptcy Court, Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir.1987) (clerks who erred in failing to carry out their duties acted within general subject matter jurisdiction of their positions and consequently qualified for quasi-judicial immunity).

---

[8] While the Ada County Clerk identified in the Complaint, David Navarro, has retired, his successor in office is automatically substituted as a party. *See* Fed. R. Civ. P. 25(d).

**INITIAL REVIEW ORDER  18**

However, like judicial immunity, quasi-judicial immunity extends only to judicial functions and does not extend to tasks that are administrative or ministerial in nature. *Forrester v. White*, 484 U.S. 219 (1988) (holding judge's demotion and discharge of a court employee were administrative acts not protected by judicial immunity). "[T]o determine whether a nonjudicial officer is entitled to absolute quasi-judicial immunity, courts must look to the nature of the function performed and not to the identity of the actor performing it." *In re Castillo*, 297 F.3d 940, 948 (9th Cir. 2002). "[I]t is only when the judgment of an official other than a judge involves the exercise of discretionary judgment that judicial immunity may be extended to that nonjudicial officer." *Id.*

As a preliminary matter, and only for the purposes of this initial review order, the Court finds that there is a colorable argument to be made that the Ada County Clerk exercises administrative or ministerial functions when arranging service of process on behalf of an indigent non-prisoner. Similarly, denying such services to an indigent prisoner would not require discretion or constitute an integral part of the judicial function. Thus, it could be argued that the Ada County Clerk does not enjoy absolute quasi-judicial immunity with regard to the claims made here. Accordingly, Plaintiff may proceed with his constitutional claims against this single Defendant.

## IN FORMA PAUPERIS

For any litigant to file a civil complaint in federal court, that litigant must either pay the filing fee in full at the time of filing or seek in forma pauperis status, which allows the litigant to pay the filing fee over time. In either case, the litigant must pay the

**INITIAL REVIEW ORDER  19**

full filing fee for having filed the complaint, regardless of whether that person's case is eventually dismissed or is unsuccessful. Based upon Plaintiff's statements of his current financial condition, the Court finds it appropriate to grant his Motion to Proceed in Forma Pauperis, which allows him to pay the filing fee over time according to the schedule set forth in 28 U.S.C. § 1915(b)(1).

Because the Court does not know the current balance of Plaintiff's account, it will waive payment of an initial partial filing fee. Plaintiff shall be required to make monthly payments of twenty percent of the preceding month's income credited to his institutional account. The agency having custody of Plaintiff shall forward payments from his account to the Clerk of the Court each time the amount in the account exceeds ten dollars, until the filing fees are paid in full.

## MOTION FOR CLARIFICATION

though Plaintiff refers to this document as a "motion," he does not appear to seek an order from the Court. Rather, it would appear that Plaintiff meant to file a "notice," and the Court will treat the document as such. Nonetheless, because it is referred to as a "motion," the Court will deny it as moot.

## MOTION FOR PRELIMINARY INJUNCTION

Because defendants have not been served, it would be inappropriate to consider Plaintiff's Motion for Preliminary Injunction at this time. Accordingly, it will be denied without prejudice. Plaintiff may renew the motion at a later time.

## CONCLUSION

**INITIAL REVIEW ORDER  20**

In sum, Plaintiff has stated three colorable constitutional claims related to the distinct treatment of indigent prisoners in terms of service of process in the state courts. As alleged by plaintiff, the statutory scheme implicates plaintiff's constitutional rights to access the courts and to equal protection under the federal constitution, as well as the right to justice under the state constitution. Nonetheless, Plaintiff may not seek retrospective relief from the previous orders of dismissal or proceed against Defendants who are either immune from suit or have no responsibility over the statutes and court rules at issue. Accordingly, the claims are dismissed against all Defendants except for the Ada County Clerk.

## ORDER

In accordance with the foregoing, **IT IS ORDERED:**

1.    Plaintiff's Motion to Proceed in Forma Pauperis (Dkt. 1) is GRANTED. Plaintiff is required to pay the statutory filing fee of $350.00 for this action according to the schedule set forth herein, and an Order for Payment of Inmate Filing Fee will be issued to begin automatic deductions from Plaintiff's inmate trust account. Plaintiff will not be assessed an initial partial filing fee at this time.

2.    Plaintiff's Motion for Clarification (Dkt. 7) is DENIED as MOOT.

3.    Plaintiff's Motion for Preliminary Injunction (Dkt. 8) is DENIED without prejudice.

4.    Defendants shall be allowed to waive service of summons by executing, or

having their counsel execute, the Waiver of Service of Summons as

provided by Fed. R. Civ. P. 4(d) and returning it to the Court within thirty

(30) days. If Defendants choose to return the Waiver of Service of

Summons, the answer or pre-answer motion shall be due in accordance with

Rule 12(a)(1)(b).   Accordingly, the Clerk of Court shall forward a copy of

the Complaint (Dkt. 3), and a copy of this Order, and a Waiver of Service of

Summons to the following counsel:

Theodore Argyle
Ada County Prosecutor's Office
200 W. Front. St., Rm. 3191
Boise, ID 83702

5.    Each party shall ensure that all documents filed with the Court are

simultaneously served upon the opposing party (through counsel if the party

has counsel) by first-class mail or via the CM/ECF system, pursuant to

Federal Rule of Civil Procedure 5. Each party shall sign and attach a proper

mailing certificate to each document filed with the court, showing the

manner of service, date of service, address of service, and name of person

upon whom service was made. The Court will not consider *ex parte*

requests unless a motion may be heard *ex parte* according to the rules and

the motion is clearly identified as requesting an *ex parte* order, pursuant to

Local Rules of Civil Practice before the United States District Court for the

**INITIAL REVIEW ORDER  22**

District of Idaho 7.2. ("*Ex parte*" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

6.      All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

7.      Discovery shall not be filed with the Clerk of Court, but shall be exchanged between parties, only, as provided for in the Federal Rules of Civil Procedure. Motions to compel discovery shall not be filed unless the parties have first attempted to work out their disagreements between themselves.

8.      No party may have more than three pending motions before the Court at one time, and no party may file a motion on the same subject matter if he or she has another motion on the same subject matter currently pending before the Court.

9.      Plaintiff shall notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

**INITIAL REVIEW ORDER  23**



DATED:  May 15, 2011

Honorable B. Lynn Winmill
Chief U. S. District Judge

**INITIAL REVIEW ORDER  24**